UNITED STATES of America,
Plaintiff–Appellee,

v.

John Angus SMITH, Defendant–
Appellant.

No. 91–5062.

United States Court of Appeals,
Eleventh Circuit.

April 8, 1992.

Gary Kollin, Law Offices of Gary Kollin, Ft. Lauderdale, Fla., for defendant-appellant.

Linda Collins Hertz, Lisa T. Rubio, Asst. U.S. Attys., Miami, Fla., David I. Mellinger, Asst. U.S. Atty., Ft. Lauderdale, Fla., for plaintiff-appellee.

Before EDMONDSON and DUBINA, Circuit Judges, and ATKINS *, Senior District Judge.

EDMONDSON, Circuit Judge:

Defendant John Angus Smith tried to trade a MAC–10 machine gun and silencer for cocaine. The question presented is whether the use of a firearm in trade for drugs supports a conviction under 18 U.S.C. § 924(c)(1) for using a firearm during and in relation to a drug trafficking felony.[1]

To establish a violation of 18 U.S.C. § 924(c)(1) in this circuit, the government must show the defendant (1) either actually or constructively possessed the firearms, and (2) used or carried the firearms during and in relation to the drug trafficking offense. *United States v. Poole*, 878 F.2d 1389 (11th Cir.1989). Smith admits to possession of the gun, but claims that his attempted barter is not the kind of use in

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Smith also claims the district court abused its discretion by admitting fingerprint identifica-

tion cards into evidence and denying his motion to sever two counts of his indictment for separate trial. We find no merit to these claims and affirm the district court's decisions.

relation to drug trafficking prohibited by section 924(c)(1).

Smith relies on *United States v. Phelps*, 877 F.2d 28 (9th Cir.1989), *reh'g denied en banc*, 895 F.2d 1281 (9th Cir.1990).[2] The defendant in that case had attempted to trade a MAC–10 for a chemical component he needed to manufacture an illegal drug, *Phelps*, 877 F.2d at 29; and the court decided that a firearm used as an item of barter in a drug transaction was not used "in relation to" the drug transaction. The *Phelps* court justified its conclusion by explaining that the defendant had no intention to use the firearm offensively, "as a weapon would normally be used." *Id.* at 30.[3]

We believe the *Phelps* opinion's stress on a defendant's alleged intentions to use the weapon offensively is incorrect.[4] The plain language of the statute supplies no such requirement, *see* 18 U.S.C. § 924(c)(1) (applying to "[w]hoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm ..."); *see also Phelps*, 895 F.2d at 1282–83 (Kozinski, J., dissenting); and in this circuit, the plain meaning of the statute controls "unless the language is ambiguous or leads to absurd results, in which case a court may consult the legislative history and discern the true intent of Congress." *United States v.*

*Kattan–Kassin*, 696 F.2d 893, 895 (11th Cir.1983) (quoting *Jones v. Metropolitan Atlanta Rapid Transit Authority*, 681 F.2d 1376, 1379 (11th Cir.1982)). We see no ambiguity in section 924(c)(1) and disagree with the conclusion that use in relation to a drug trafficking crime somehow excludes use in trade for drugs.[5]

Smith's argument (and that of *Phelps*) seems particularly puzzling in the light of our position that violations of section 924(c)(1) do not require that firearms be "fired, brandished, or even displayed during the drug trafficking offense." [6] *Poole*, 878 F.2d at 1393. Many courts have found firearm use even where the firearms could not be used offensively because they were out of reach of the defendant, *see Poole*, 878 F.2d at 1390 (weapons partially concealed in ceiling and under clothes on floor of utility room and defendant in other room); *Rosado*, 866 F.2d at 970 (loaded revolver in defendant's car a short distance away from scene of transaction sufficient to show firearm "use"); inoperable, *United States v. York*, 830 F.2d 885, 891–92 (8th Cir.1987), (no firing pin; cylinder and barrel improperly aligned), *cert. denied*, 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988); or unloaded, *United States v. Coburn*, 876 F.2d 372, 375 (5th Cir.1989)

**2.** Smith suggests that this circuit adopted *Phelps* in *United States v. Poole*. His reading of *Poole* is incorrect; *Phelps* is cited in *Poole* only for the proposition that the mere presence of a firearm does not constitute use for the purposes of section 924(c)(1). *See Poole*, 878 F.2d at 1393. We agree that mere presence of a firearm is insufficient for a section 924(c)(1) violation, but we believe Smith's use of a firearm in trade for drugs constitutes more than that firearm's "mere presence" on the scene.

**3.** The government in *Phelps* conceded the absence of intent on defendant's part to use the weapon offensively; the government makes no such concession here.

**4.** Because we disagree with the Ninth Circuit's decision that use in trade does not constitute use for purposes of section 924(c)(1), we find no merit to defendant's contention that he was entitled to such a jury instruction.

**5.** We would reach the same conclusion if forced to confront the legislative history of section

924(c)(1). *See* S.Rep. No. 225, 98th Cong., 2d Sess. 314 n. 10, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3492 n. 10 (requirement that use be "in relation to" crime precludes statute application where firearm's "presence played no part in the crime, such as a gun carried in a pocket and never displayed or referred to in the course of a pugilistic barroom fight"); *see also Phelps*, 895 F.2d at 1283–84 (Kozinski, J., dissenting) ("Congress used the broad term 'in relation to' precisely to avoid interpretive hair-splitting about peculiar and unexpected factual scenarios that might escape a more narrowly drawn definition"); *United States v. Rosado*, 866 F.2d 967, 970 (7th Cir.) (Congress did not intend that statute be given a "cramped reading"), *cert. denied*, 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989).

**6.** That the gun in this case was displayed is undisputed. The record is unclear as to whether it was loaded; but ammunition was readily accessible in the black case in which the gun was packed. Smith's MAC–10 had been modified to fire in a fully automatic mode capable of dispensing 950 rounds per minute.

(defendant had no shells for unloaded shotgun mounted in truck window).

 More like this case are instances in which section 924(c)(1) convictions were upheld despite defendant's claim of non-belligerent reasons for having the weapon. *See United States v. Rivera,* 889 F.2d 1029, 1031 (11th Cir.1989) (defendant's status as police officer instructed to carry firearm at all times did not preclude his conviction under section 924(c)(1)), *cert. denied sub nom., Sud v. United States,* — U.S. —, 111 S.Ct. 93, 112 L.Ed.2d 65 (1990); *United States v. Payero,* 888 F.2d 928, 930 (1st Cir.1989) (defendant not entitled to have defense theory that he was carrying gun much as other people normally carry a wallet); *United States v. Meggett,* 875 F.2d 24, 26 (2d Cir.) (defendant claimed to be gun collector), *cert. denied sub nom., Bradley v. United States,* 493 U.S. 858, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989); *United States v. Raborn,* 872 F.2d 589, 595 (5th Cir.1989) (defendant claimed gun was for protection from muggers).

 The lesson of these opinions is that use may be established by evidence of possession—and Smith concedes possession of the MAC–10—"if possession is an integral part of and facilitates the commission of the drug trafficking offense." *Poole,* 878 F.2d at 1393. Although facilitation of the offense has often been interpreted to mean firearm use for protection of drugs, *see Meggett,* 875 F.2d at 29; *United States v. Matra,* 841 F.2d 837, 841–42 (8th Cir.1988); or for the protection and emboldening of the defendant, *see United States v. Brown,* 915 F.2d 219, 224 (6th Cir.1990); *United States v. Vasquez,* 909 F.2d 235 (7th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991); *United States v. Laing,* 889 F.2d 281, 289 (D.C.Cir. 1989), *cert. denied sub nom., Martin v. United States,* 494 U.S. 1008, 110 S.Ct. 1306, 108 L.Ed.2d 482 (1990); *Payero,* 888 F.2d at 929; *Rosado,* 866 F.2d at 970; we believe all that is needed is "an intent to use the weapon to facilitate *in any manner* the commission of the offense." *Phelps,* 895 F.2d at 1286 (Kozinski, J., dissenting).

 When drug purchasers trade guns for drugs, the trade not only facilitates, but also becomes, an illegal drug transaction. We therefore conclude that trading guns for drugs constitutes use of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1).

The conviction is AFFIRMED.